(C.D. 2499)

Novelty Import Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided December 22, 1964)

*Siegel, Mandell & Davidson* (*Murray Sklaroff* and *David Serko* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before Oliver, Wilson, and Nichols, Judges

Nichols, Judge: The merchandise involved in this case, imported from Japan on or about July 26, 1959, is described on the invoice as a "Mechanical Propelling Jumbo Pencil." It was assessed with duty at 45 cents per gross and 40 per centum ad valorem under paragraph 1550 of the Tariff Act of 1930, as mechanical pencils, and is claimed to be dutiable at 16⅔ per centum ad valorem under paragraph 412 of said tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, and T.D. 52476, as manufactures of which wood is the component material of chief value. A claim for classification as an article in chief value of metal has been abandoned since it was stipulated at the trial that the merchandise was in chief value of wood.

The pertinent provisions of the tariff act are as follows:

Par. 1550. * * *

* * * * * * *

(c) Mechanical pencils, 45 cents per gross and 40 per centum ad valorem.

Par. 412 [as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, *supra*]. Manufactures of wood

or bark, or of which wood or bark is the component material of chief value, not specially provided for :

| * | * | * | * | * | * | * |

Other * * *_____ 16⅔ ad val.

At the trial, a representative sample of the merchandise was received in evidence as plaintiff's exhibit 1. It consists of an article in the shape of a pencil, about 10 inches long and having a circumference of about 2¼ inches. It has a metal tip at one end and an eraser at the other. It contains lead which may be propelled and repelled mechanically by turning the tip. It is brightly colored and a cord and tassel are attached to the eraser end. Removel of the eraser discloses a hole in the barrel portion. Plaintiff's witness, Sidney Bernstein, testified that the lead is the same type as that used in the ordinary pocket mechanical pencil and that it is projected and retracted in the same way. He did not know what the hole in the wooden end of the barrel was for and had never seen extra leads inserted or carried there.

Mr. Bernstein stated that he is an employee of Goldfarb Novelty Co., the parent company of the plaintiff herein; that he has worked for Goldfarb for 4 years and prior to that had been employed by Enko for 27 years. The business of these firms was the sale of novelties, souvenirs, and gift items. The witness' present duties are to sell and service various chain variety stores and souvenir locations. His prior duties were similar. He is familiar with plaintiff's exhibit 1 and has been selling this item for approximately 10 years, but not in its imported condition. After importation, die-cuts showing various views are applied to the articles in the firm's factory department, so that the items can be sold at souvenir locations throughout the entire country. For instance, when the article is to be sold at the Statue of Liberty, a picture of the Statue of Liberty is applied; and at the zoo a picture of an animal. Such subjects are always applied before the merchandise is sold. Several items with such views attached were received in evidence as plaintiff's collective illustrative exhibit 2. The views are on what appears to be plastic strips about 2 inches long which are wrapped around the aricles at the eraser end. They are illustrated by a picture in color of the Statue of Liberty, United Nations, and Empire State Building, respectively. The addition of the views did not change the mechanical properties of the article.

The witness testified that he sells the merchandise with the views to the Woolworth Stores, S. H. Kress, Wallgreen's, Whelan's, the Empire State Observatory, Statue of Liberty, the Bronx Zoo, and the New York Aquarium. He visits his customers once a week and has seen these items sold at retail on souvenir or gag counters. He also visited stationery counters but had not observed these articles at such counters. In his experience they were never purchased for stationery

departments. This type of merchandise is also sold to the same kind of outlets throughout the country and at trade shows in New York, Chicago, Boston, Texas, and Florida. It is sold as a giant pencil, specifically for amusement or gag purposes.

According to the witness, the size of the article would not admit of its use as a writing or sketching instrument. He had tried to use it for writing purposes without success. He had never seen consumers using these articles and had never seen them in the home alongside a telephone or in a kitchen or used by a housewife to make notes. He had seen them on display in stores but had never seen them used for writing purposes.

The witness stated that exhibit 1 "propels and repels" lead and defined a mechanical pencil as one that propels and repels lead. In his opinion anything that propels and repels lead is a mechanical pencil whether or not it is used for writing.

The witness identified an article similar to those in plaintiff's collective exhibit 2 but having a picture on the entire barrel of the pencil as one in which the design work was done in Japan. (Plaintiff's exhibit 3.) There was also received in evidence an article of the same size and shape and decoration except that it was not mechanical but contained the lead in the wooden barrel as in an ordinary wooden pencil. (Plaintiff's illustrative exhibit 4.) Mr. Bernstein stated that it is sold to the same customers as plaintiff's exhibits 1 through 3. He had attempted to use it for writing purposes but had not been successful, because it was too cumbersome. It could be sharpened with a knife. He admitted that the article was exactly the same as an ordinary pencil except that it was larger and more cumbersome and more difficult to handle. It has lead as in an ordinary pencil and could be used to write and make marks.

Plaintiff's second witness was Enid Hester Skolnik, a secretary and receptionist in the employ of plaintiff's attorneys. She testified that she had been asked to use an item such as plaintiff's exhibit 1 in taking messages and making notes on a particular day and that she had done so. She found the experience tiring because the article was difficult and cumbersome to handle and her wrist began to ache after about a half hour. Once she became disgusted and picked up an ordinary pencil. She produced an article which she said she had purchased about 6 years previously at the Brooklyn Aquarium as a souvenir, which was received in evidence as plaintiff's exhibit 5. It is very similar to plaintiff's exhibit 1 except that it appears to be of better quality and has additional leads in the hole in the wooden barrel. Mrs. Skolnik testified that she had used it only once for writing purposes. She had never taken the eraser off and did not know that there was a hole on top of the barrel under the eraser and had never put in a new lead.

Defendant called Theodore J. Peters, corporation secretary of American Home Products Co., manufacturer of component parts for fountain pens, ball pens, and mechanical pencils. He has sold parts and mechanical pencil actions to every major pen and pencil company throughout this country, but has never sold pencils assembled.

The witness took apart plaintiff's exhibit 1 and testified that it consists of a wooden barrel with a metal tip, a rubber eraser, and a mechanical pencil mechanism which propels and repels graphite lead. He defined a mechanical pencil as any writing instrument in which the lead is propelled, repelled, or expelled by a mechanical means, and stated that that definition is common and general throughout the trade. He read a definition from the Federal Excise Tax Regulations, regulation 48.4201–2, stating:

The term "mechanical pencils" includes any writing instrument which contains a moveable marking or writing substance, the desired length of which is controlled by a propelling or repelling device.

According to the witness, the size of the barrel does not determine whether an article is or is not a mechanical pencil; so long as it is a writing instrument which propels mechanically, it is a mechanical pencil. A plastic baseball bat in miniature with a mechanical pencil mechanism is a mechanical pencil, since it is used to write with, although in the opinion of the witness, it is difficult to do so.

Mr. Peters testfied that he had purchased an article at Fisherman's Wharf in San Francisco, which was received in evidence as defendant's illustrative exhibit A. It consists of a pencil-shaped item similar to plaintiff's exhibit 1, contained in a cardboard box. The box bears the wording: "Souvenir" and "World's Largest Mechanical Pencil." The article is marked "No. 9 Fisherman's Wharf San Francisco" and has depicted thereon a bridge, a boat, and a fisherman. Additional leads are in the hole in the barrel. The witness said he had purchased it to fool around with but had written with it and had seen other persons buy and write with similar articles. He had also seen such articles purchased in the gift shop of the Shoreham Hotel in Washington and had seen people write with them. People tried them to see if they would write before paying for them. He himself had used such an article in his office for about a week to see if it could be used for writing. He found it satisfactory because he has awfully long fingers, but said that for others, for continued incessant writing, it might not be the best thing. He stated that it is a mechanical pencil and can be used for writing, but that it is definitely in the minority so far as sales of pencils are concerned.

The witness admitted that the exhibits in this case, including the one he purchased, are primarily bought and sold in tourist areas as

souvenirs, and that a large number of ordinary pencils could be bought for the price of this one.

Plaintiff claims that the imported article is a novelty item sold for a souvenir or a gag and, although made to simulate a pencil, is not in fact a pencil. Defendant contends that it is a mechanical pencil properly classifiable as such under paragraph 1550(c), *supra*. The issue, therefore, is whether this article falls within the meaning of the term "mechanical pencil" as used in the tariff act.

While an *eo nomine* designation without limitation includes all forms of the article, the merchandise must be in fact the article intended by Congress in order for it to be classified under the designation. The mere designation of an imported article by a particular name does not necessarily bring it within the *eo nomine* tariff classification. *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699; *United States* v. *Durst Mfg. Co., Inc.*, 46 CCPA 74, C.A.D. 700; *Sears, Roebuck and Co.* v. *United States*, 46 CCPA 79, C.A.D. 701; *Downing* v. *United States*, 9 Treas. Dec. 1012, T.D. 26454; *M. Pressner & Co.* v. *United States*, 44 Cust. Ct. 10, C.D. 2145; *Paul E. Sernau, Inc.* v. *United States*, 46 Cust. Ct. 514, Abstract 65737.

*United States* v. *Quon Quon Company*, *supra*, involved rattancore articles woven in basket weave, which looked like shallow, flat baskets. They were designed, produced, sold, and used as tabletops. The issue was whether the articles were classifiable as baskets or as parts of furniture. The court found that the provision for "baskets" was an *eo nomine* designation but that the real question was whether the imported articles were in fact "baskets." The court held that the use of the articles could not be ignored and that, since the record established that they were sold and used only as tabletops and not as baskets, they were classifiable as parts of furniture.

The *Durst Mfg. Co.* case, *supra*, involved lawn sprinkler tops which were claimed to be classifiable under paragraph 390 of the Tariff Act of 1930, as modified, which provided for "Bottle caps of metal, collapsible tubes, and sprinkler tops." The court pointed out that *eo nomine* designations need not be applied to merchandise which Congress has not intended to be so classified and that the legislative history of paragraph 390 indicated that Congress intended the term "sprinkler tops" to include various closures for bottles and other containers, and not the top parts of lawn sprinklers.

In *Sears, Roebuck and Co.* v. *United States*, *supra*, the question was whether certain umbrella-shaped articles, used for protecting food from insects, known as food umbrellas, were classifiable under the tariff provision for umbrellas. The court held that Congress did not intend the term "umbrella" to include items having some of the mechanical features of the article commonly known as an umbrella but used for a different purpose than protection against rain or sun.

The *Downing* case involved paper articles simulating fans, used as favors or toys. The court held that they were not fans and pointed out that, although they could be used temporarily for fanning purposes, they were flimsy and unfit for practical use for any length of time. They were not dealt in as fans and were sold in the novelty department rather than the fan department of stores.

The *Pressner* case and the *Sernau* case both involved miniature knives. In the first case, they were flimsily constructed items having a blade inserted in a wooden handle and were sold or given away at rodeos, carnivals, and circuses as souvenir items. They were never sold to cutlery dealers and were not used as knives. They were held not to be classifiable as knives but as articles of metal. The *Sernau* case involved toy pocket knives sold to novelty dealers under the designation of key-chain novelties, and not to cutlery dealers. They were not used for cutting but as charms. The court pointed out that all the definitions of the term "knife" required that the article be a cutting instrument or have a blade with a sharp edge for cutting. It was held that, since the imported merchandise could not sharpen a pencil and was not used for cutting purposes, it was not classifiable as a knife. *Crystal Craft, Inc.* v. *United States*, 37 Cust. Ct. 368, Abstract 60247, was distinguished because it was established in that case that the involved miniature knives were used to sharpen pencils, scrape out a pipe bowl, or cut string or the end of a cigar.

The term "pencil" has been defined as follows:

3. A slender cylinder or strip of black lead, colored chalk, slate, etc., or such a cylinder or strip incased in a wooden, metal, or other kind of handle at the tip of which the point of lead is exposed for writing or drawing either by sharpening or by projection from within as by means of a screw. [Webster's New International Dictionary, 1957 edition.]

1. An instrument, usually consisting of a slender and relatively long cylindrical or angular casing of wood enclosing longitudinally a thin strip of graphite, colored chalk, or similar material, used, after trimming to a point, for writing, drawing, marking, etc.; also, a similarly shaped piece of chalk, graphite, slate, etc., without casing or in a metal or paper sheath, for like use. * * * [Funk & Wagnalls New Standard Dictionary, 1956 edition.]

Mechanical pencils have been described as follows:

Mechanical metal pencils have a hollow center throughout the length for insertion of pencil lead, one end of which protrudes to form the point of the pencil which may be regulated mechanically. * * * [Dictionary of Tariff Information, 1924, p. 560. Summary of Tariff Information, 1929, p. 751.]

*Mechanical pencils, n.s.p.f.*, are pencils of the mechanical type other than those composed of metal. They are made of various materials, including wood, galalith, synthetic phenolic resin, and other plastics. [Summary of Tariff Information, 1929, p. 2124.]

Mechanical pencils, covered by this summary, are pencils in which the lead is not an integral part of the pencil, but may be inserted or changed as desired.

The lead, which is extended or withdrawn by mechanical means, is similar to that used in wood-cased pencils but usually is smaller in size. * * * [Summaries of Tariff Information, 1948, vol. 15, part 9, p. 47.]

See also the definition in the Federal Excise Tax Regulations, quoted above.

Not all articles called pencils are classifiable under tariff provisions relating to pencils. For instance, wooden pencils with a filling of soap, known as soap pencils, were held not to be classifiable as pencils of wood. *United States* v. *American Express Company*, 9 Treas. Dec. 516, T.D. 26192. The court noted that, though called "soap pencils," the articles were intended for cleaning spectacles and eyeglass lenses and did not belong to the class of writing or marking pencils manifestly referred to in the tariff provision. Wooden pencils filled with an unctuous material in the form of a lead, used for coloring the eyebrows or for facial make-up, have been held dutiable as cosmetics and not under the *eo nomine* provision for pencils. *Factor* v. *United States*, 15 Ct. Cust. Appls. 401, T.D. 42570; *Stationery Import & Export Corp.* v. *United States*, 23 CCPA 229, T.D. 48081. In the *Factor* case, the court stated that the articles might be literally within the tariff provisions for "Pencils of paper, wood, or other material not metal, filled with lead or other material," but that they were used as a cosmetic and were more specifically provided for as such.

Other articles not in the ordinary form of pencils have been held classifiable as such where they were used for writing purposes. *B. Illfelder & Co.* v. *United States*, 9 Treas. Dec. 596, T.D. 26245; *Goldfarb Novelty Co.* v. *United States*, 63 Treas. Dec. 1192, Abstract 22611; *Frank P. Dow Co., Inc.* v. *United States*, 46 Treas. Dec. 728, Abstract 48224.

The *Illfelder* case involved articles made of wood, the same length as but slightly smaller in diameter than the ordinary lead pencil, having a diminutive crooked handle resembling the handle of a cane at one end, the other end being sharpened as a lead pencil and fitted with a metal cap. The court stated in the course of the opinion:

The article in question in the case at bar is adapted for use for any purpose to which an ordinary pencil could be put. It differs only in that it is a little more fancy in design. We know of no other use to which it could be put, nor is it any way adapted for use as a plaything or toy. It is not long enough to be used as a cane by the smallest child large enough to walk, and if used as a plaything or toy at all, it must be in the same way and for the same purpose that an ordinary lead pencil would be played with by a child.

The *Goldfarb* case involved mechanical pencils in the form of guns or rifles. There was testimony that by pressing the trigger the lead jumped out and the article could be used as a pencil. The court held that the articles had utilitarian purposes and were dutiable as pencils.

In *Frank P. Dow Co., Inc.* v. *United States*, *supra*, it was held that

a miniature broom with a lead pencil in the handle was a pencil and classifiable as such.

It is to be noted that the provision in the Tariff Act of 1930 for mechanical pencils is contained in a paragraph covering penholder tips, penholders and parts, fountain pens and holders, and stylographic pens, and that it follows a paragraph covering pencils and lead for pencils. All of these are writing instruments or parts thereof.

In the instant case, the collector has classified the merchandise as a mechanical pencil and it is presumed that he found every fact to exist which was necessary to sustain that classification. *Dorward & Sons Co. et al.* v. *United States*, 40 CCPA 159, 162, C.A.D. 512. This includes a finding that the imported article is a writing instrument. The burden, therefore, rests on plaintiff to establish that this is not a fact, that the collector's classification is erroneous, and that the claimed classification is correct. *Davies, Turner & Co.* v. *United States*, 40 CCPA 193, 194, C.A.D. 517; *United States* v. *G. Klein & Son*, 42 CCPA 73, 76, C.A.D. 574.

It is clear from the cases discussed above that a mere simulated pencil that could not be used for writing would not be a pencil for tariff purposes and that, on the other hand, eccentric, novel, or "gag" features would not bar classification of an article as a pencil if it was practicable for writing. Nor can this court embark on a course of excluding articles from *eo nomine* classifications otherwise applicable because of poor design or bad materials. *A. L. Farnsworth* v. *United States*, 50 Cust. Ct. 62, 66–67, C.D. 2389, and cases cited; *United States* v. *William Clarke Co., a/c American Agar & Chemical Co.*, 50 CCPA 67, C.A.D. 822. "All forms, grades and qualities of the named article are embraced by such a designation." Id. at p. 70.

The article before the court is an ordinary mechanical pencil in everything but size. The showing made that because of its size it is not suitable as a tool of trade for a secretary in a law office does not establish that it is unsatisfactory for other persons, who use a pencil but intermittently. For example, a housewife preparing a shopping list might find the large size and garish ornamentation an advantage, as precluding the easy mislaying which is the bane of the ordinary pencil.

It is significant that the evidence shows that consumers test whether these articles can write before paying for them. There is nothing in the record to establish that such consumers do not use them as pencils. Plaintiff's first witness had seen the articles on display in shops and souvenir stands and had never observed whether or how consumers used them. His knowledge of them ended with their sale to the retailer. Moreover, in his opinion, an article which propels and repels lead is a mechanical pencil even if it is not used for writing. Plaintiff's

second witness, the law office secretary, testified only as to her own trial of the article in performance of her duties as a secretary. Defendant's witness, on the other hand, had used and had seen others try such articles for writing generally.

While the merchandise at bar is sold at souvenir or "gag" counters, not stationery departments, no evidence was presented as to whether or not such departments offer oversize pencils of other makes. Furthermore, there is nothing in the record to indicate any established canon or trade practice fixing acceptable dimensions for mechanical pencils.

In brief, plaintiff has not shown that the "Mechanical Propelling Jumbo Pencil" is not a pencil; that it cannot write; or that it is not used for writing. Therefore, the plaintiff has not overcome the presumption of correctness attaching to the collector's classification and it must stand.

The protest is overruled, and judgment will be rendered for the defendant.