NOVELTY IMPORT CO., INC. v. UNITED STATES (No. 5206)*

United States Court of Customs and Patent Appeals, March 10, 1966

*Siegel, Mandell & Davidson (David Serko, Murray Sklaroff,* of counsel) for appellant.

*John W. Douglas,* Assistant Attorney General, *Andrew P. Vance,* Chief Customs Section, *Samuel D. Spector* for the United States.

[Oral argument February 7, 1966 by Mr. Sklaroff and Mr. Vance]

*C.A.D. 872.

Before Rich, Acting Chief Judge, and Smith and Almond, Associate Judges,
and Judge William H. Kirkpatrick**

Almond, Judge, delivered the opinion of the court:

 Novelty Import Co., Inc. appeals from the judgment of the United States Customs Court, First Division,[1] overruling its protest and sustaining the classification of the involved merchandise as a mechanical pencil under the provisions of paragraph 1550(c) of the Tariff Act of 1930, dutiable at 45 cents per gross and 40 per centum ad valorem. In its protest, appellant claimed the merchandise to be properly classifiable as a manufacture of which wood was the component material of chief value, dutiable at 16⅔ per centum ad valorem, under the provisions of paragraph 412, Tariff Act of 1930, as modified.

The pertinent provisions of the Tariff Act of 1930 are:

Paragraph 1550(c):

Mechanical pencils, 45 cents per gross and 40 per centum ad valorem.

Paragraph 412, as modified by T.D. 52373:

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for * * * 16⅔% ad val.

Inasmuch as it was stipulated at the trial that the merchandise was in chief value of wood, a claim for classification as an article in chief value of metal was abandoned.

A representative sample of the goods, as imported, was received in evidence as Plaintiff's Exhibit 1. As found by the court below, it consists of an article in the shape of a pencil, approximating 10 inches in length and about 2¼ inches in circumference. It carries a metal tip on one end and an eraser on the other. It contains lead in the barrel portion which may be propelled and repelled by turning the tip. The article is brightly colored and a cord and tassel are attached to the eraser end. The eraser covers a hole in the barrel portion. The lead is the same type as that used in the ordinary pocket mechanical pencil and is projected and retracted in the same way. Replacement for used up or broken lead is readily obtainable in any store that handles ordinary pencils.

Appellant's witness, Bernstein, testified that he sold novelties, souvenirs and gift items for approximately 31 years and that exhibit 1 was never sold in its imported condition. Subsequent to importation, the goods are processed by decorating the surface with die-cut views and in such state are sold to various souvenir locations, such as chain

---

[1] 53 Cust. Ct. 216, C.D. 2499.

**United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Chief Judge Worley,* pursuant to provisions of Section 294(d), Title 28, United States Code.

variety stores. throughout the entire country. Through these channels they are dispensed to those desiring to make such purchases at retail from the souvenir or "gag" counters of the various outlets. The addition of the views to the imported article in nowise changes the mechanical properties of the article or affects any adaptability it may have for use.

Mr. Bernstein testified, in substance, that the articles are sold as giant pencils specifically for amusement or gag purposes and that his frequent visits to retail customers failed to disclose display or sale of the articles at stationery counters. It was his opinion that the size of the article would not admit of its use as a writing or sketching instrument; that his endeavor to use same for such purpose was without success, and that he had never seen consumers or anyone else make use of one of the articles for such purpose. He stated, however, that a "mechanical pencil is one that propels and repels"; that exhibit 1 comes within the definition of a mechanical pencil and that anything that propels or repels lead is a mechanical pencil, whether used for writing or not.

Plaintiff below submitted the testimony of Mrs. Skolnik, a secretary-receptionist in the office of plaintiff's attorney. She stated that she was requested by plaintiff's trial counsel to use an article such as exhibit 1 in the same manner and for the same purpose that she would use a pencil. She took twenty messages with it during a day's trial and found it difficult to handle, tiring and cumbersome.

The Government called Mr. T. J. Peters, corporate secretary and general manager of American Home Products Co., manufacturer of component parts for fountain pens, ball pens and mechanical pencils. While he had never sold assembled pencils, he had sold parts and mechanical pencil actions to every major pen and pencil company throughout this country. He disassembled appellant's exhibit 1 and stated that it consisted of a wooden barrel with a metal tip, a metal ferrule, a rubber eraser and a mechanical pencil as its operating mechanism. He defined the working mechanism as that "which propels, repels, or expels the graphite lead" and a mechanical pencil as any writing instrument in which the lead is propelled, repelled, or expelled by mechanical means and that this definition is accepted as common and general throughout the trade. The witness stated that the trade definition was one which had developed in usage over the years. With the court's permission, he read into the record the government's definition of a mechanical pencil as set forth in regulation 48.4201–2 of the Federal Excise Tax Regulations, which states:

The term "mechanical pencils" includes any writing instrument which contains a moveable marking or writing substance, the desired length of which is controlled by a propelling or repelling device.

This witness further stated that the size of the barrel is not the determinative factor so long as the device is a writing instrument which propels mechanically, nor is the fact that it is more cumbersome and not subject to writing use with the facility which attaches to the conventional writing instrument. An illustrative exhibit was received in evidence contained in a cardboard box bearing the wording "Souvenir" and "World's Largest Mechanical Pencil." The box contained a pencil-shaped item similar to appellant's exhibit 1 which, the witness stated, was purchased by him at Fisherman's Wharf in San Francisco, California. He stated that he wrote with it and observed purchases and use by others of similar articles. He also stated that he had seen like articles purchased and used for writing in Washington, D.C.

The record reflects that the goods in issue, as well as the purchase made by Mr. Peters and others, are more expensive than ordinary pencils and are primarily bought and sold in tourist areas as souvenirs.

The essence of appellant's contention is that the imported article is a novelty item sold for a souvenir or a gag and that, while made to simulate a pencil, it is not in fact a pencil.

Appellee contends that the article in issue is a mechanical pencil properly classifiable as such under paragraph 1550(c).

In the course of an exhaustive and well considered opinion, reviewing and distinguishing a long line of cases relating to the subject matter here under consideration, the court below stated:

It is clear from the cases discussed * * * that a mere simulated pencil that could not be used for writing would not be a pencil for tariff purposes and that, on the other hand, eccentric, novel, or "gag" features would not bar classification of an article as a pencil if it was practicable for writing. Nor can this court embark on a course of excluding articles from *eo nomine* classification otherwise applicable because of poor design or bad materials. *A. L. Farnsworth* v. *United States*, 50 Cust. Ca. 62, 66–67, C.D. 2389, and cases cited; *United States* v. *William Clarke Co., a/c American Agar & Chemical Co.*, 50 CCPA 67, C.A.D. 822. "All forms, grades and qualities of the named article are embraced by such a designation." Id. at p. 70.

It is both apparent and significant that the only distinguishing feature between appellant's "Mechanical Propelling Jumbo Pencil" and the conventional mechanical pencil is that of size. This feature of itself is not sufficient to remove it from the category of a mechanical pencil, especially where it is shown, as here, that it is capable of and was used, albeit inconveniently, to serve the function of a writing instrument. The record discloses that prior to sale purchasers tested similar articles to determine whether they could use them to write. We do not regard as a significant circumstance, relative to tariff classification, that the articles subject to transportation was embellished

scenically to impart souvenir or gag appeal related to a selected situs of sale.

We do, however, regard as conveying relevant significance, in support of appellee's contention, the definition of "mechanical pencils" stated in the excise tax regulation hereinabove recited, and supported by the unrefuted testimony of the witness Peters as the definition applied by common usage in the pencil trade and industry.

Of like and corroborative import are the following definitions aptly descriptive of the article under consideration:

> 3. A slender cylinder or strip of black lead, colored chalk, slate, etc., or such a cylinder or strip incased in a wooden, metal, or other kind of handle at the tip of which the point of lead is exposed for writing or drawing either by sharpening or by projection from within as by means of a screw. [Webster's New International Dictionary, 1957 edition.]
>
> Mechanical pencils covered by this summary are pencils in which the lead is not an integral part of the pencil, but may be inserted or changed as desired. The lead, which is extended or withdrawn by mechanical means, is similar to that used in wood-cased pencils but usually is smaller in size * * *. [Summaries of Tariff Information, 1948, Vol. 15, Part 9, p. 47.]

Appellant argues that the record supports the conclusion that the merchandise is not chiefly used for writing purposes. While we are not persuaded that the test of chief use is applicable to the situation here presented ▮▮▮ the law is well settled that the collector is presumed to have found every fact necessary to sustain the classification. *United States* v. *John A. Steer Co.*, 46 CCPA 132, C.A.D. 715; *United States* v. *Marshall Field & Co.*, 17 CCPA 1, T.D. 43309.

It was incumbent upon appellant to rebut the presumption as to the correctness of the classification. Suffice it to say that sale of the merchandise to stores for dispensing from souvenir counters did not establish use. Aside from the fact of the presumptive inherency of use deriving from the classification, the only use reflected by the record was for writing. Bernstein's testimony as to use is completely negative. Mrs. Skolnik did use the pencil for writing, while Peters not only used it himself but also witnessed its use for writing by others.

Appellant relies on *United States* v. *Bruce Duncan Co., Inc.*, 50 CCPA 43, C.A.D. 817, for its contention that chief use is determinative of the classification of merchandise under paragraph 1550(c). We do not find support in *Duncan* for appellant's contention here. We find persuasive the argument advanced for appellee that the *eo nomine* provision for mechanical pencils in paragraph 1550(c) is for a specific item of merchandise and unlike "tableware," as in *Duncan*, does not describe a general class or kind of merchandise embracive of many different items. The court stated that in determining chief use it is proper to consider not only the testimony offered "but the characteristics of the merchandise itself" or proof that the article was substantially used in another manner. The "decorated porcelain snack

sets" in *Duncan* were amenable to classification under several provisions of the Tariff Act and hence proof of chief use was vital and essential to a proper classification. Here we have merchandise consisting of specific items imbued with all the characteristics of appearance, conformation, size of lead, mechanical operation and adaptability to use, admittedly inconvenient, as a mechanical pencil, thus obviating, in our judgment, any necessity to resort to any use to determine its classification. In substance, it is conceded that the importation at bar is a mechanical pencil, which in the absence of relevant proof to the contrary bespeaks its intended use.

█ The law is so firmly settled, as to not require recitation of authority therefor, that the burden of proof is on a protestant to show by substantial evidence not only that the collector's classification is wrong but also to establish the classification of the merchandise in issue which is asserted to be proper.

We agree with the Customs Court that appellant has not overcome the presumption of correctness attaching to the collector's classification of the merchandise in issue.

The judgment of the Customs Court is accordingly *affirmed*.

MARTIN, J., took no part in the consideration or decision of this case.